## MAX WEINER *v.* WILLIAM T. DICKERSON ET AL.

1. TAX SALES. *Laws* 1890, *p.* 16, *ch.* 5. *List of state lands. Evidence.*

    An unsigned, unsealed, uncertified and unfiled writing, without proof of its origin or history, is insufficient to prove a sale of lands for taxes under laws 1890, p. 16, ch. 5, providing that the auditor should prepare a correct list of state tax lands in each county and forward the same to the chancery clerk who should record the same and furnish a copy, certified under the seal of his office, to the sheriff and tax collector and empowering the tax collector with such copy to sell the lands, although the writing was properly captioned for the list to be furnished by the auditor under said statute and contained the lands in controversy.

2. SAME. *Recitals in deed.*

    The recitals of a sheriff's and tax collector's deed, made under said statute, are insufficient to prove the jurisdictional facts authorizing a sale thereunder.

FROM the chancery court of Quitman county.

HON. A. MC. KIMBROUGH, Chancellor.

Weiner, appellant, was complainant in the court below; Dickerson and others, appellees, were defendants there. From a decree in defendant's favor the complainant appealed to the supreme court. The opinion states the case.

*St. John Waddell,* for appellant.

The court's attention is called to a careful examination in the record of what purports to be a list of the lands held by the state and furnished the chancery court clerk under the act of 1890 for the sale by the tax collector under that act, and it will be seen that said list is not authenticated in any way. There is no certificate of any officer whatever on it. There is not even the name of any official to it, and it is not even marked filed by the chancery court clerk, and, so far as appears from said list, it is nothing more than some loose papers, possessing no official signification whatever or indication of when compiled or received.

It clearly appears from the act of 1890 that a plan was adopted by the state by which a new and perfect tax title could be acquired to all tax lands it then held, regardless of any defect which then existed in its existing title to the same. To carry out this plan, the auditor was required to furnish a complete and perfect list to each county, of all tax lands appearing on the state's books in the county, and on receipt of this list the chancery clerk, sheriff and president of the board of supervisors were to go carefully over the same and make all necessary corrections thereon and eliminate therefrom the same, so as to make it conform to the records of the county, and when all this was done the clerk was required to record the completed list and furnish the sheriff a copy thereof under his seal of office, by which to make sale of the lands described thereon, and the sheriff was required to make return to the auditor of all his actions thereunder.

It was the completed list issued to the sheriff by the chancery clerk under his seal of office that constituted the sheriff's authority to make sale of the lands. The law did not authorize the sheriff to sell any lands except those appearing on the completed list, duly recorded and certified to him under the seal of the office of the chancery court clerk, and this list was in its nature an execution requiring the sheriff to sell the lands

thereon described and make full return of all his actions there-under to the auditor of public accounts.

Nothing of this kind appears to have been done in Quitman county. If the court presumes that the list in this case was furnished by the auditor, there is nothing to show that it is a correct list, or when it was received by the chancery clerk, or whether ever received by him or not, and there is nothing in this record to show that the clerk, sheriff or president of the board of supervisors ever revised or corrected said list, and it is certainly not the list furnished the sheriff under which to sell the lands; because it has neither the name of the chancery court clerk on the same or his seal of office.

*I. T. Lowe,* for appellee.

The only question raised, really, on this appeal, is the want of a certificate to the list sent by the auditor to the chancery clerk of Quitman county, of the lands held by the state, the said list being sent as required by the said acts of 1890, page 16. And we insist that the statute required no certificate, in fact, only required a list or memoranda of lands held by the state for taxes, giving proper description, date of sales to the state, amounts sold for, and all taxes, damages and costs that have accrued since said sale up to August 10, 1890, and then that said list be forwarded by the auditor to the chancery clerk of the county where the lands were situated, not one word is mentioned in said act about a certificate to said lists or otherwise. Acts 1890, page 16.

In this case we insist that the corrections required by law were made, as the presumption is that those things were done, that under the law ought to have been done. The law presumes that the sheriff and tax collector performed his duty, when there is no proof to the contrary. And, further, we see from the deed executed by Jones, sheriff and tax collector, to Dickerson, that the lands were sold on the proper day, and the very wording of the statute is incorporated in the deed.

82 Miss.—5

CALHOON, J., delivered the opinion of the court.

This controversy is over the title to lot 4, section 10, township 29, range 2 west, in Quitman county. Other lands are embraced in the bill, but the decree in chancery below is apealed from only in so far as it affects this particular lot 4 in section 10.

The claim of Weiner, the complainant in the proceeding, is clearly just, and not disputed, unless the defandant had a good title by purchase at sheriff's sale pursuant to chapter 5, page 16, acts 1890. That act provides that the auditor should prepare a correct list of state tax land in every county, which list should embrace the date of sale, amount for which sold, with taxes, damages and costs accruing to August 1, 1890, which list the auditor should forward to the chancery clerk, who should record it in a separate book. The act further provided that the chancery clerk, on receipt of the list, and before recording it, should notify the sheriff and president of the board of supervisors of the receipt of the list, whereupon the three should meet to compare and correct it, upon which being done, the clerk should at once record the list in that separate book, and at once furnish the sheriff a copy of it under the seal of his office, and that the sheriff, on receiving the list from the clerk, should advertise and sell the land. Section 4 of the act provides that the deed of the sheriff, pursuant to such sale, shall convey absolutely all title to the state, or parties claiming under or through her, to said lands; and section 6 provides that such sales shall vest and convey absolute title to said lands, which could not be impeached "on account of any irregularity in former sales, or on account of any vague or indefinite description or informality or illegality of assessment, or for any other reason whatsoever that may have existed prior to said sale herein provided for."

In the progress of the trial the defendants offered in evidence a piece of paper headed: "List of lands now held by the state now forfeited for taxes in Quitman county, Mississippi,

furnished the chancery clerk of said county by the auditor under the provisions of an act entitled, 'An act to facilitate the sale of lands held by the state for taxes, correct erroneous sales and assessments, and indefinite descriptions, and for other purposes. Approved February 22d, 1890.' "

Under this there is a statement of the various taxes, and funds and fees, with dates of sale to the state, describing all lands and number of acres, but there is no indication anywhere of the person making this list, or showing that it ever was in the auditor's office, and it is not signed by anybody, and has no certificate whatever attached to it. There is no indication whatever that it was ever filed or marked filed by the chancery clerk. There is no showing that the chancery clerk ever recorded it, or ever furnished the sheriff a copy of it under his seal of office. As to its constituting any part of any record, it appears to be no more, on the face of the papers, than if it had been blown into the record by a breeze.

The complainant objected to the list and the sheriff's deed, and we cannot concur with the learned chancellor in the view that the evidence showed any power in that officer to sell. If it be conceded that the list need not be certified to by the auditor because the act does not specifically require it, even in that case, it would seem, there should appear some showing that it, in fact, did come from the auditor, and, if this be not true, certainly the sheriff should be armed with a copy of it from the chancery clerk "under the seal of his office," as required by section 2 of the act, before he can validly sell. The recitals of a sheriff's deed cannot supply statutory power.

*Reversed, and decree here confirming appellant's title to lot 4 in section 10, township 29, range 2 west, in Quitman county.*